UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOSE BURGOS,

                                    Plaintiff

        v.

DR. AVRAM, et al.,

                                    Defendants

Case No. 2:24-cv-01359-GMN-BNW

SCREENING ORDER ON THIRD
AMENDED COMPLAINT
(ECF No. 20)

On June 4, 2025, the Court issued an Order screening Plaintiff Jose Burgos' Second Amended Complaint under 28 U.S.C. § 1915A. (ECF No. 19.)  The Screening Order dismissed the Second Amended Complaint without prejudice for failure to state a claim, granted Plaintiff leave to file a Third Amended Complaint, and warned him that the Third Amended Complaint was his final opportunity to file a viable complaint in this case. (*Id.* 4, 8–9.)  Plaintiff has filed a Third Amended Complaint ("TAC") (ECF No. 20), and the Court now screens the TAC under 28 U.S.C. § 1915A.

I.      **SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a).  In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2).  *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison

Litigation Reform Act, a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.  When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A formulaic recitation of the elements of a cause of action is insufficient. *See id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.*  "When

1   there are well-pleaded factual allegations, a court should assume their veracity and then

2   determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining

3   whether a complaint states a plausible claim for relief . . . [is] a context-specific task that

4   requires the reviewing court to draw on its judicial experience and common sense." *Id.*

5   Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua*

6   *sponte* if that person's claims lack an arguable basis either in law or in fact. This includes

7   claims based on legal conclusions that are untenable (e.g., claims against defendants

8   who are immune from suit or claims of infringement of a legal interest which clearly does

9   not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or

10  delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also*

11  *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

12  **II.    SCREENING OF TAC**

13          The first complaint screened in this case was Plaintiff's First Amended Complaint.

14  (ECF No. 11.) In the First Amended Complaint, Plaintiff sued Dr. Avram and an unnamed

15  Director of Nursing for deliberate indifference to serious medical needs based on events

16  that allegedly occurred while Plaintiff was confined at High Desert State Prison ("HDSP").

17  (*Id.* at 1–5.) The Court found that Plaintiff had plausibly alleged that he suffered from

18  objectively serious medical needs based on his diagnosed neuropathy, chest pain, and

19  hand pain. (ECF No. 10 at 5.) However, the Court found that Plaintiff failed to state a

20  colorable claim for deliberate indifference to serious medical needs because he had not

21  alleged facts to plausibly show that either Dr. Avram or the Director of Nursing personally

22  knew about and disregarded his serious medical needs.[1] (*Id.* at 5–7.) Therefore, the

23  Court dismissed the First Amended Complaint, granted Plaintiff leave to amend, and

24  advised him as follows: "If Plaintiff chooses to file a Second Amended Complaint, he

25  should allege facts to explain how each named Defendant—whether that Defendant is

26  _____

27  [1] The First Amended Complaint also included a failure-to-protect claim, but because
    Plaintiff's allegations concerned just the adequacy of his medical care, the Court
28  dismissed the failure-to-protect claim without prejudice to addressing Plaintiff's medical
    treatment under the appropriate framework. (ECF No. 10 at 4–5.)

Dr. Avram, the Director of Nursing, or some other member of prison staff—knew about and disregarded Plaintiff's serious medical needs." (*Id.* at 7.)

The Second Amended Complaint presented the same deficiencies as the First Amended Complaint. That is, Plaintiff again named only Dr. Avram and HDSP's Director of Nursing as Defendants, and Plaintiff again did not allege facts to plausibly show how either of these Defendants was personally deliberately indifferent to his serious medical needs. (*See* ECF No. 18 at 1–6, 10–12.) Indeed, after listing Dr. Avram and the Director of Nursing as Defendants in the caption of the Second Amended Complaint, Plaintiff did not mention them at all in the body of the Second Amended Complaint. (*See id.*) So the Court again found that Plaintiff failed to state a colorable claim for deliberate indifference to serious medical needs, dismissed the Second Amended Complaint, and granted Plaintiff leave to amend.[2] (ECF No. 19 at 6–8.) The Court advised Plaintiff that, "if he files a Third Amended Complaint, he is not restricted to naming only Dr. Avram or the Director of Nursing as Defendants," and that he could sue individuals he did not know the names of by separately identifying them as Doe Defendants. (*Id.* at 8.) However, the Court also advised Plaintiff that he "must [] allege sufficient facts to show what each specific Defendant—including any Doe Defendant—did to violate his rights." (*Id.*) And the Court warned Plaintiff that the Third Amended Complaint was his "final opportunity to file a viable complaint in this case," so failure to cure the deficiencies outlined in the Screening Order would "subject this entire action to dismissal for failure to state a claim, without further leave to amend." (*Id.* at 4.)

The TAC that is currently before the Court (ECF No. 20) does not cure the deficiencies outlined in the prior Screening Order. The only substantive difference between the TAC and the Second Amended Complaint is that Plaintiff no longer lists Dr. Avram and the unnamed Director of Nursing as Defendants; instead, he now sues four unidentified individuals referred to in the caption as CO John Doe #1, CO John Doe #2,

---

[2] The Second Amended Complaint also included a failure-to-protect claim and an equal protection claim, but because Plaintiff's allegations did not include any facts to support those claims, the Court dismissed them without prejudice. (ECF No. 19 at 5–6.)

1    John Doe #3 Nursing, and Jane Doe #4 Nursing. (*Id.* at 1.)  Otherwise, the factual

2    allegations and claims in the TAC are the same as in the Second Amended Complaint.

3    (*Compare id.* at 2–3, 5, 10–12, *with* ECF No. 18 at 2–4, 10–12.)

4          Because Plaintiff alleges no new facts in the TAC, the Court repeats the summary

5    of factual allegations from its prior Screening Order:

6
7          Plaintiff went to a hospital in Las Vegas and was diagnosed with neuropathy
           in his fingers and hands.  After returning to HDSP, Plaintiff experienced
           severe pain in his fingers, hands, and chest.  In July 2024, Plaintiff filed at
8          least three emergency grievances requesting treatment.  By July 27, 2024,
           Plaintiff had not received any treatment, and his chest pain led him to "man
9          down" with a night shift correctional officer ("CO").  Plaintiff still did not
           receive treatment, and that CO told Plaintiff that "filing emergency
10         grievances is not going to work to be seen by medical."  On July 31, 2024,
           Plaintiff was taken to "medical" to discuss his blood work, and when he
11         asked about the emergency grievances he filed regarding neuropathy and
           chest pain, "medical was unaware" of them.  On August 17, 2024, Plaintiff's
12         pain led him to "man down" again with the night shift CO, but Plaintiff still
           did not receive treatment, and the CO would not give him an emergency
13         grievance.  Plaintiff's chest pain continued to go untreated at least until
           Plaintiff transferred from HDSP to Ely State Prison in March or April 2025.
14

15   (ECF No. 19 at 4–5 (internal citations omitted).)

16         As explained in the prior Screening Orders, prisoners have an Eighth Amendment

17   right to be free from deliberate indifference to serious medical needs. *Farmer v. Brennan*,

18   511 U.S. 825, 828 (1994).  To establish a violation of this right, "a plaintiff must satisfy

19   both an objective standard—that the deprivation was serious enough to constitute cruel

20   and unusual punishment—and a subjective standard—deliberate indifference." *Snow v.*

21   *McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v.*

22   *David*, 744 F.3d 1076 (9th Cir. 2014)).   In the TAC, just as in the First and Second

23   Amended Complaints, Plaintiff does not allege facts to plausibly show how any particular

24   Defendant was deliberately indifferent to his medical needs. (*See* ECF No. 20 at 2–5, 10–

25   12.)  The allegations in the TAC reference one or more unidentified night shift COs and

26   one or more unidentified members of "medical" (*see id.* at 10–12), but the allegations

27   does not refer to any of these unidentified individuals by the names given to the Doe

28   Defendants in the caption of the TAC (CO John Doe #1, CO John Doe #2, John Doe #3

Nursing, and Jane Doe #4 Nursing). (*See id.* at 1.)  So the Court is unable to discern which (if any) of the unidentified individuals referenced in TAC is represented by a particular Doe Defendant.  That is not sufficient to state a colorable claim. *See Sena v. Daniels*, No. 2:21-cv-1154-GMN-NJK, 2021 WL 9793464, at *6 n.3 (D. Nev. Sept. 30, 2021) ("A plaintiff must allege in the complaint what <u>each</u> separately identified Doe defendant did to violate [his] rights.  The Court must be able to discern which specific unnamed person allegedly violated a plaintiff's rights in a particular situation.  Thus, a plaintiff must separately describe each individual Doe and describe the role each of them played violating [his] rights, alleging facts sufficient to state a colorable claim against each specific Doe defendant.").

Plaintiff also fails to state a colorable failure-to-protect claim because the TAC's allegations concern the adequacy of Plaintiff's medical care, not the conditions of his confinement. *See Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (quoting *Farmer*, 511 U.S. at 834) ("In a failure to protect claim, an inmate satisfies the 'sufficiently serious deprivation' requirement by 'show[ing] that he is incarcerated under conditions posing a substantial risk of serious harm.'").  And Plaintiff fails to state a colorable equal protection claim because the TAC does not allege that Plaintiff's lack of medical treatment was due to membership in a protected class or that he was treated differently than other similarly situated inmates. *See Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001) (setting out the requirements for a standard equal protection claim); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) (setting out the requirements for a class-of-one equal protection claim).

Moreover, even if the Court were to liberally construe the allegations in the TAC as stating a colorable claim against one or more particular Doe Defendant, the TAC would still not be viable.  A case cannot proceed when the only potentially viable Defendants are unidentified, as the Court cannot order service of a complaint on an unidentified person.  Ordinarily, when a complaint has no identified Defendants to serve, the Court may dismiss it without prejudice and grant leave to amend to give the plaintiff an

opportunity to file a complaint that states at least one colorable claim against at least one identified Defendant.  In those situations, plaintiffs are first encouraged to use whatever available procedures exist at their places of confinement to learn the name of a particular defendant.  Then, if that method of investigation proves unsuccessful, the plaintiffs are permitted to file a properly supported and complete motion under Federal Rule of Civil Procedure 45 for the Court to issue a subpoena duces tecum.  A subpoena duces tecum requires the person served with the Rule 45 subpoena to provide requested information in their possession.

Here, however, Plaintiff has already filed a non-viable complaint in this case on three separate occasions.  And the Court warned Plaintiff what would happen if the Third Amended Complaint was not viable—this entire action would be dismissed without prejudice, without further leave to amend.  The Court therefore dismisses the TAC without prejudice, without leave to amend. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court, which may deny leave to amend due to ' . . . repeated failure to cure deficiencies by amendments previously allowed . . . .'")).  This dismissal without prejudice allows Plaintiff to pursue his claims in a new case, if he so chooses, by filing a complaint under a new case number that contains at least one colorable claim against at least one identified Defendant.  If Plaintiff chooses to initiate a new case, and he still has not been able to identify at least one Defendant, then he may file a properly supported and complete motion under Rule 45 for the Court to issue a subpoena duces tecum in the new case.[3]

---

[3] Plaintiff must carefully review Rule 45 of the Federal Rules of Civil Procedure before filing any motion for a subpoena duces tecum in the new case.  In general, however, the Court advises Plaintiff that any such motion must attach a copy of his proposed Rule 45 subpoena(s) to his motion, and that motion must clearly identify the documents that would have the information Plaintiff is seeking and explain why the documents and information would be available from the company, entity, or person that is the target of the subpoena.

**III.    CONCLUSION**

It is therefore Ordered that the Third Amended Complaint (ECF No. 20) is dismissed without prejudice for failure to state a claim.

The Clerk of Court is kindly requested to enter judgment accordingly and close this case. No other documents may be filed in this now-closed case.  If Plaintiff wishes to pursue his claims, he must file a complaint in a new case, under a new case number, that contains at least one colorable claim against at least one identified Defendant.

It is further Ordered that any appeal from this Order would not be taken "in good faith" under 28 U.S.C. § 1915(a), so the Court will not grant Plaintiff *in forma pauperis* status on any appeal.

DATED: June 30, 2025

_____
Gloria M. Navarro, Judge
United States District Court